EMMETT S. HICKMAN CO., a Delaware corporation, Plaintiff,

v.

EMILIO CAPALDI DEVELOPER, INC., a Delaware corporation, and Independence Mall, Inc., a Delaware corporation, Defendants.

Superior Court of Delaware.

New Castle.

March 4, 1969.

Frank J. Miller, Walker, Miller & Wakefield, Wilmington, for plaintiff.

Aubrey B. Lank of Theisen & Lank, Wilmington, for defendants.

## OPINION

MESSICK, Judge.

This is an action for loss of profits occasioned by defendant's alleged wrongful termination of a shopping center management agreement prior to its stipulated expiration date. On April 15, 1963, the parties entered into a ten year written management agreement whereby plaintiff was employed "* * * exclusively to rent, lease, operate and manage * * *" certain property upon which defendant was constructing a shopping center. Under the terms of the agreement plaintiff was to receive six percent of gross store rentals in return for its use of due diligence in managing the premises and furnishing its services for the renting, leasing, and operating of said premises as well as rendering monthly statements of receipts, expenses, and charges, and remitting to defendant receipts less disbursements. As a part of the agreement, defendant gave plaintiff authority to advertise, collect rent, including the use of legal procedures therefor, make repairs, hire employees and enter into service contracts.

Pursuant to the agreement, plaintiff initially prepared and distributed a brochure concerning the proposed center, as well as advertising the center in the newspapers and conducting personal solicitation of prospective tenants. The first lease was signed in July of 1963. Thereafter, and until defendant terminated the agreement on November 15, 1965, tenants were procured as units of the center were completed. The first rental statement was issued in mid 1964, and although there were some misunderstandings as to the meaning and accuracy of the statements, rental statements were issued continuously by plaintiff until November 1965. Plaintiff's agent, Tingle, spent many hours reviewing plans with prospective tenants as well as defendant's agents. Although plaintiff, through its agent, Tingle, was available to provide the service, the majority of alterations, repairs, maintenance, heat, and rubbish removal were either handled directly by defendant or contracted for by defendant with plaintiff's assistance. Tenant complaints made to defendant were never referred to plaintiff, and those made to plaintiff were referred to defendant as per defendant's direction.

In July of 1964 Concord Realty Co., which had opened an office in the center, was hired by defendant to act as an additional rental agent. From this time until November 15, 1965, Concord and plaintiff cooperated in a joint effort to procure tenants for the center; Concord being paid for its services by defendant. The majority of leases procured from July 1964 until November 1965 were procured by Concord. Concord also assisted plaintiff in other duties under the agreement, although there is no evidence to reveal that defendant's employment of Concord was due to any dissatisfaction with plaintiff's performance prior to that date, and plaintiff continued to be paid by defendant under the terms of the agreement.

Plaintiff seeks $28,858.00 for lost profits between November 1965 and April 1973, computing these profits by using the actual gross rents received from the center in 1965, 1966, and 1967, and plaintiff's own expenses in 1965, and projecting future gross income and expenses from these figures. Defendant asserts that its termination of the agreement was excused by plaintiff's failure to perform under the agreement. Defendant submits that plaintiff failed to perform in the following respects: Plaintiff was not diligent in procuring leases, necessitating the hiring of Concord; plaintiff failed to diligently collect rents and to properly account therefor, and that plaintiff never performed the responsibilities of management.

 The first issue involved is whether defendant's repudiation of the agreement was excused by the character of

plaintiff's prior performance. It is clear that defendant's repudiation constitutes a breach of contract for which defendant may be liable in damages. 17 Am.Jur.2d 900, Contracts, § 443. However, in order to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all the provisions of his contract. Carroll v. Cohen, 5 Boyce 233, 91 A. 1001, 1003 (Del.Super.1914). (Similar action involving premature discharge of a manager of a department store). It seems to this Court that plaintiff has substantially performed its part of the agreement in every respect except, perhaps, the handling of alterations, repairs, maintenance, heat, and rubbish removal. With respect to these items, it appears that defendant, whose personnel were on the premises engaged in construction of the center during the times involved here, for the most part, took over the performance of these tasks with no notice to plaintiff. Under these circumstances, defendant cannot here take advantage of any failure of plaintiff to perform in these respects. 5 Williston on Contracts 224, § 677 (3rd Ed. 1961). Plaintiff has thus substantially performed the agreement in all essential elements and is entitled to recover damages for defendant's repudiation.

 The second issue raised is whether plaintiff's lost profits are too speculative to permit recovery. As stated in 5 Corbin on Contracts, 124 Pt. 6, Ch. 56, § 1020:

> "In order to be entitled to a verdict, or a judgment, for damages for breach of contract, the plaintiff must lay a basis for a reasonable estimate of the extent of his harm, measured in money."

However, as is later stated at p. 125 of Corbin, § 1020, supra:

> "There are many cases in which, by reason of the ordinary experience and belief of mankind, the trial court is convinced that substantial pecuniary harm has been inflicted, even though its amount in dollars is incapable of proof. If the defendant had reason to foresee this kind of harm and the difficulty of proving its amount, the injured party will not be denied a remedy in damages because of the lack of certainty. It seems probable also that a lesser degree of certainty will be required as against one whose breach is described as 'wilful' * * * than against one whose breach was due to misfortune and whose efforts to perform were honest and in good faith. In such cases the trial court and jury have a greater degree of discretion and doubts will more readily be resolved against the party committing the breach."

In accordance with these general principles, it is this Court's opinion that plaintiff's damages, as calculated, are not too speculative to deny recovery. Defendant should, however, be permitted a recoupment of $477.50 representing the amount paid plaintiff after November 15, 1965.

Accordingly, plaintiff shall be awarded its lost profits between November 15, 1965 and April 15, 1973, in an amount the Court shall determine after giving defendant an opportunity to offset the costs of rentals from November 15, 1965 until April 15, 1973.