# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

LISA SINCLAIR,  )
)
  Appellant,  )
)
  v.  )  C.A. No: CPU4-23-001732
)
CMI SOLAR & ELECTRIC, INC.,  )
)
  Appellee.  )

Submitted: September 10, 2024
Decided: October 31, 2024

Lisa Sinclair
26 Deer Run
Newark, DE 19711
*Self-represented Appellant*

James R. Donovan, Esq.
Doroshow, Pasquale, Krawitz & Bhaya
1008 N. Walnut Street
Milford, DE 19963
*Attorney for Appellee*

## DECISION AFTER TRIAL

**Danberg, C.J.**

This breach of contract action, which is before the Court on appeal *de novo* from a decision of the Justice of the Peace Court, stems from an agreement between Appellant Lisa Sinclair ("Ms. Sinclair") and Appellee CMI Solar & Electric, Inc. ("CMI") for the sale and installation of a generator. On September 10, 2024, the case proceeded to trial on Ms. Sinclair's breach of contract claim and breach of implied warranty of good quality and workmanship.[1] At the conclusion of trial, the Court reserved decision. This is the Court's final decision after trial.

## FACTS AND PROCEDURAL HISTORY

On or about April 19, 2021, Ms. Sinclair and CMI entered into an installation agreement (the "Agreement") whereby CMI was to supply and install a generator (the "Generator") into Ms. Sinclair's home.[2] The Agreement included the Generator, a 5-year limited manufacturer's warranty, permits and inspection fees, and a 120 gallon above ground propane tank supplied and installed by Dixieland Energy (hereinafter "Dixieland").[3] Further, the Agreement specified the use of composite

---

[1] Originally CMI initiated suit between the parties for a breach of contract claim in the Justice of the Peace Court to recover for Ms. Sinclair's refusal to pay the balance owed under the parties' contract. In Justice of the Peace Court, Ms. Sinclair brought counterclaims for a breach of contract and breach of implied warranty of good quality and workmanship. After the Justice of the Peace Court's order, Ms. Sinclair filed a notice of appeal and, although she was the defendant below, Ms. Sinclair filed her counterclaim as the operable "complaint" in this Court. While not consistent with Rule 72.3—which requires the plaintiff-below to file the complaint on appeal—CMI failed to object, or otherwise challenge the procedural error, and given that the notice of appeal was timely filed, Ms. Sinclair's procedural error did not divest this Court of jurisdiction. *See* CCP Civ. R. 12(h); *see, e.g., Emerald Prs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[2] Ex. 5 at 1.

[3] Ex. 2 at 2-3.

2

wiring.[4] Notably, CMI's "installation philosophy"—which as expressly stated—guaranteed not only that Ms. Sinclair's Generator would function properly, but also that it would be installed safely, thoroughly, and with an attention to aesthetics.[5] In exchange, Ms. Sinclair agreed to pay $6,560.95,[6] of which she put down a $4,020 deposit on May 7, 2021.[7]

Unfortunately, execution of the Agreement seemed doomed from the start. Delivery of the Generator was delayed for months, largely due to the COVID-19 pandemic.[8] It was not until early 2022, nearly nine-months after execution of the Agreement, that installation of the Generator commenced. Had delivery delays been the extent of the shortcomings, perhaps this contract would have been fulfilled with only slight irritation. Regrettably, the installation did not proceed satisfactorily.

The next issue arose over the installation of the Generator, a project which spanned three days. At Ms. Sinclair's insistence, the Generator was installed atop of an existing wooden platform. While seasoned journeymen completed most of the project, inexperienced apprentices were allowed to work unsupervised for a period

---

[4] Ex. 2 at 2-3.
[5] Ex. 2 at 1.
[6] Ex. 2 at 1.
[7] Ex. 12 at 2; Ex. 30 at 3.
[8] Ex. 7 at 3. It should be noted that CMI failed to keep Ms. Sinclair updated about the progress of the Generator's delivery. Instead, Ms. Sinclair reached out and followed-up not only with CMI but with the Generator's manufacturer to find out about delivery. Further, the Generator was damaged in shipment but two of the same generators where delivered, allowing CMI to use the second one for installation.

of time.[9] At trial, CMI conceded that allowing the unsupervised apprentice work was improper. Indeed, issues with the quality of work were undeniable. By all accounts, it did not live up to the "aesthetically pleasing" contractual term. Further, the installation was not up to code and thus failed the electrical inspection.[10] However, CMI promptly remedied the electrical deficiencies and passed reinspection within a month.[11]

The installation of the propane tank, which fueled the generator, also did not proceed smoothly. CMI's subcontractor for this part, Dixieland, performed the work without a permit.[12] Consequently, Ms. Sinclair was fined $300.[13] Moreover, by CMI's own admission, the placement of the propane tank was in violation of county code as it was less than ten (10) feet from the Generator.[14] At this stage, Ms. Sinclair was not shy in expressing her dissatisfaction with the work performed. After numerous complaints, CMI informed Ms. Sinclair, via email, its "work is completed" while also acknowledging outstanding work yet to be performed.[15]

---

[9] Ex. 13 at 1.

[10] Ex. 15 at 1 (inspection failed for two issues: (1) a cover on a PVC conduit; and (2) open breakers knockouts in Ms. Sinclair's panel).

[11] Ex. 20 at 1.

[12] Ex. 17 at 1; Ex. 18 at 1; Ex. 22 at 1.

[13] Ex. 1 at 1; Ex. 20 at 1. Testimony of Mr. Davis revealed that CMI did pay for the $300 fine issued by New Castle County for working without a permit.

[14] Ex. 17 at 1; Ex. 18 at 1; Ex. 40 at 5. Dixieland was subcontracted by CMI. As such, CMI was responsible for all work completed by Dixieland.

[15] Ex. 22 at 1.

Conspicuously, this communication occurred a few weeks in advance of the scheduled final inspection.

The day before final inspection, CMI notified Ms. Sinclair that the project as it existed was fated to fail final inspection and corrective action was needed.[16] Specifically, the county inspector indicated that the Generator could not be positioned atop the wooden platform.[17] This issue was forecasted early on; the wooden platform had been a subject of much discussion.[18] According to CMI, they advised Ms. Sinclair that the wooden platform was not a proper base, but Ms. Sinclair insisted that it would not be a problem. Ms. Sinclair, on the other hand, maintains that she expressed concern about the platform all along.[19] In any event, CMI's eleventh hour notification coupled with their prior expression that "work is completed" struck a nerve with Ms. Sinclair. Despite its request, Ms. Sinclair prohibited CMI's return to her property and refused to pay the final invoice of $3,080.73.[20]

Subsequently, Ms. Sinclair endeavored to have the work completed by other contractors. In doing so, she discovered additional inadequacies in the work performed by CMI. Namely, SER wiring was used to connect the Generator to the

---

[16] Ex. 24 at 1; Ex. 25 at 1.
[17] Ex. 25 at 1.
[18] Ex. 2 at 11; Ex. 6 at 1; Ex. 18 at 1; Ex. 25 at 1; Ex. 27 at 1; Ex. 29 at 1; Ex. 34 at 1; Ex. 36 at1.
[19] Ex. 16 at 1; Ex. 18 at 1.
[20] Ex. 24 at 1; Ex. 26 at 1.

5

electrical box while the Agreement specifically called for composite wiring.[21] Also, an internal switch on the generator was not turned on, which resulted in the emission of carbon dioxide into her garage. Additionally, the replacement contractor had to relocate the propane tank to comply with county code. In total Ms. Sinclair spent $8,810.83 to remedy these issues.[22]

Due to Ms. Sinclair's refusal to pay CMI's final invoice,[23] CMI initiated suit against her in the Justice of the Peace Court.[24] Ms. Sinclair appealed the Justice of the Peace Court's decision to this Court raising the following claims: (1) common law fraud; (2) consumer fraud act; (3) breach of contract; and (4) breach of implied warranty of good quality and workmanship. While Ms. Sinclair raised these claims in her complaint on appeal, at trial she abandoned her common law fraud and consumer fraud act claims.

The Court is unable to supplement Ms. Sinclair's failure to raise these arguments at trial, despite the fact that some evidence submitted at trial, if properly

---

[21] Ex. 33 at 1.
[22] Ms. Sinclair spent: $732 for Generac installer to replace pre-existing wood with a GenPad (Pl. Ex. 11 at 1; Pl. Ex. 15 at 2); $3,532 for the electrician (Pl. Ex. 12 at 1; Pl. Ex. 13 at 1); $1,400 for the propane tank (Pl. Ex. 16 at 1); $2,916.93 to install the gas line and connection to the propane tank (Pl. Ex. 2 at 1; Pl. Ex. 17 at 1); and $230 to fix the setting on the generator (Pl. Ex. 14 at 1).
[23] The final invoice, #16843, was issued on January 21, 2022, Ms. Sinclair owed CMI $3,080.73. Ex. 30 at 3.
[24] See CMI Solar & Electric, Inc. v. Sinclair, Del. J.P., CA No. JP13-22-006744, Moyer, M. (May 11, 2023).

presented, provided some support for those claims.[25] Thus, the issues ripe for decision are Ms. Sinclair's claims of breach of contract and breach of implied warranty of good quality and workmanship.

## DISCUSSION

In a bench trial the Court serves as finder of fact; it must weigh the credibility of witnesses and resolve the conflicts in their testimony.[26] It is incumbent on the plaintiff to prove each element of their claims by a preponderance of the evidence, meaning "proof that something is more likely than not."[27] As such, the Court must "find in favor of the party upon whose side the greater weight of the evidence is found."[28]

### A. Breach of Contract Claim

To recover for a breach of contract, the party alleging the breach must prove, by a preponderance of evidence, that: (1) a contract existed between the parties; (2)

---

[25] The Supreme Court of Delaware has mandated that when a party appears unrepresented the Court "will provide *pro se* litigants some degree of latitude in preparing and present their cases." *Buck v. Cassidy Painting, Inc.*, 2011 WL 1226403, at *2 (Del. Super. Ct. March 28, 2011). "The trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff." *Id.*

[26] *See Johnson v. State*, 929 A.2d 784 (Del. 2007) (TABLE); *In re 2004 Harley Davidson VIN No. 1VF9FV31A84R116374*, 2011 WL 601440, at *3 (Del. Super. Ct. Feb. 2, 2011); *Pencader Associates, LLC v. Synergy Direct Mortgage Inc.*, 2010 WL 2681862, at *3 (Del. Super. Ct. June 30, 2010).

[27] *Del. Express Shuttle, Inc.*, 2002 WL 31458243, at *17 (quoting Del. Super. P.J.I. Civ. § 4.1 (2000)).

[28] *D.W. Burt Concrete Construction, Inc. v. Dewey Beach Enterprises, Inc.*, 2016 WL 639653, at *2 (Del. Super. Ct. Feb. 17, 2016) (citing *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Ct. Feb. 20, 2009)).

7

the defendant materially breached an obligation imposed by the contract; and (3) the plaintiff suffered damages because of the breach.[29] Delaware law has clearly established that "in order to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all of the provisions of [the] contract."[30] Similarly, a party in material breach cannot then complain if the other party fails to perform.[31]

It is undisputed that a valid, enforceable, agreement existed between the parties. Based on the evidence presented at trial, CMI breached that agreement. However, the existence of a breach alone does not inherently satisfy Ms. Sinclair's burden with regards to the element of breach, for not all breaches are created equal. Delaware law distinguishes between breaches which are slight and immaterial, and those which are consequential to the underlying purpose of the contract, known as material breaches.[32] In other words, to satisfy her burden of proof, Ms. Sinclair must demonstrate that CMI's breach was a material one.

---

[29] *Gregory v. Frazer*, 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Tech., LLC v. Hewlett-Packard, CO.*, 840 A.2d 606, 612 (Del. 2003).
[30] *Emmett Hickman Co. v. Emilio Capano Dev., Inc.*, 251 A.2d 571, 73 (Del. Super. 1969).
[31] *SLMSoft.Com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *15 (Del Super. Ct. April 2, 2003).
[32] *Williams Co., Inc. v. Energy Transfer LP*, 2020 WL 3581095, at *14 (Del. Ch. July 2, 2020).

8

A party is justifiably excused from performance under a contract when the other party commits a material breach.[33] "Whether a breach is material is a fact-sensitive analysis"[34] which requires "weighing the consequences in the light of the actual custom of [individuals] in the performance of contracts similar to the one that is involved in the specific case."[35] A breach is considered material where it undermines the core purpose of the agreement; it "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract."[36] The Restatement (Second) of Contracts has been adopted by Delaware to assist the fact finder in determining whether a breach is material by considering:[37]

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[38]

---

[33] *Commonwealth Constr. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *19 (Del. Super. Ct. Aug. 13, 2006) (citing *Eastern Elec. & Heating Co. v. Pike Creek Prof'l Ctr.*, 1987 WL 9610, at *4 (Del. Super. Ct. April 7, 1987)).
[34] *Commonwealth Constr. Co.*, 2006 WL 2567916, at *19.
[35] *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, at 278 (Del.Ch.2003).
[36] *Preferred Inv. Serv., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013) (quoting *Shore Inv., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *5 (Del. Super. Ct. Nov. 28, 2011).
[37] *Id.* (citing *Daystar Constr. Mgmt., Inc. v. Mitchell*, 2006 WL 2053649, at *7 (Del. Super. Ct. July 12, 2006)).
[38] Restatement (Second) of Contracts § 241; *see also Commonwealth Constr. Co.*, 2006 WL 2567916, at *19.

Here, Ms. Sinclair pointed to several points of error which she considered to be actionable breaches of the agreement, including: (i) the use of SER wiring, instead of composite; (ii) the final product was unsightly; (iii) the failure to obtain necessary permits; and (iv) safety-related deficiencies, such as the emission of carbon dioxide and placement of the propane tank. Further, Ms. Sinclair pointed to the work is complete e-mail as the point where the Agreement was effectually terminated.

Viewed individually, none of the breaches described by Ms. Sinclair constitute a material breach; none of those deficiencies independently undermines the purpose of the Agreement, i.e., installation of a functioning generator. However, those minor breaches culminated in a material breach when CMI sent the e-mail stating "our work is complete." At that point, the purpose of the Agreement had not been fulfilled, depriving Ms. Sinclair of the benefit she expected. The e-mail was an unequivocal expression that CMI did not intend to cure any deficiencies—a position that falls well below standards of good faith and fair dealing. Considering the factors outlined in Section 241 of the Restatement (Second) of Contracts, the Court finds that CMI materially breached the agreement.

At trial, CMI took issue with Ms. Sinclair's refusal to allow remediation the day of the final inspection. However, CMI's material breach of the Agreement occurred well in advance of its day-of efforts to cure deficiencies before final

10

inspection. That material breach relieved Ms. Sinclair of the implicit obligation that she allow CMI access to her property.

Having found that Ms. Sinclair proved, by a preponderance of the evidence, the existence of an agreement and a material breach of that agreement, the Court next turns to the element of damages. All elements of a claim must be proven by a preponderance of the evidence, including the damages sought by Ms. Sinclair.[39] To recover damages in a contract action, Ms. Sinclair must do so to a reasonable certainty.[40] When the Court is "acting as the fact finder ... [the Court] may not set damages based on mere 'speculation or conjecture' where the plaintiff fails to adequately prove damages."[41] While expert testimony is not always required, it is necessary when the testimony would require scientific, technical or other specialized knowledge.[42]

When considering the evidence proffered by Ms. Sinclair, the reasonable repair costs necessary to reposition the propane tank in proximity with the Generator cannot be established without expert testimony. Since it would require scientific, technical, or other specialized knowledge. While she does submit paid invoices, Ms.

---

[39] *Buck v. Viking Holding Mgmt. Co. LLC*, 2024 WL 4352368, at *22 (Del. Super. Ct. Sept. 30, 2024).

[40] *Town of Townsend v. Grassbusters, Inc.*, 2019 WL 3493904, at *4 (Del. Super. Ct. Aug. 1, 2019).

[41] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) (quoting *Medek v. Medek*, 20019 WL 2005365, at *12 (Del. Ch. July 1, 2009)).

[42] *Grassbusters, Inc.*, 2019 WL 3493904, at *4; D.R.E. 701(c).

Sinclair offers no expert testimony regarding the need for the following: cost of a propane tank; repositioning the propane tank to is new location; the scope of the work required; how to calculate other components of cost of repair damages such as connecting the Generator to the propane tank; and whether the internal switch was the cause of the carbon dioxide emissions. Therefore, Ms. Sinclair's proffers are legally insufficient to support a finding of damages to any degree of certainty.

## B. Breach of Implied Warranty of Good Quality and Workmanship

Ms. Sinclair also alleges that CMI failed to install the Generator in accordance with applicable county codes and the product's manufacture installation specifications. A builder's implied warranty of good quality and workmanship is recognized in Delaware and arises by operation of law.[43] "Where a person holds himself out as a competent contractor to perform labor of a certain kind, the law presumes that he possesses the requisite skill to perform such labor in a proper manner, and implies as a part of his contract that the work shall be done in a skillful and workmanlike manner."[44]

In assessing whether the contractor's work met a workmanlike manner, "'the standard is whether the party displayed the degree of skill or knowledge normally

---

[43] *Gibbons v. Whalen*, 2009 WL 3014325, at *2 (Del. Com. Pl. Sept. 21, 2009); *Sachetta v. Bellevue Four, Inc.*, 1999 WL 463712, at *3 (Del. Super. June 9, 1999); *Marcucilli v. Boardwalk Builders, Inc.*, 2002 WL 1038818, at *4 (Del. Super. Ct. May 16, 2002).

[44] *Gibbons*, 2009 WL 3014325, at *2 (quoting *Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 22 (Del. Super. 1908)).

possessed by members of their profession or trade in good standing in similar communities' in performing the work.'"[45] A "good faith attempt to perform a contract, even if the attempted performance does not precisely meet the contractual requirement, is considered complete if the substantial purpose of the contract is accomplished."[46] Even if the owner is dissatisfied, the contractor can recover costs if the project meets a reasonable standard of satisfaction and complies with applicable laws, regulations, and county building codes.[47] Essential to the claim is that the plaintiff must prove, by a preponderance of the evidence, that the damages sought are reasonable and appropriate[48]—the same standard needed to prove damages under a breach of contract.[49]

In the instant case, it is evident that CMI clearly held itself out as possessing the requisite skill to install the Generator. As CMI held itself out to be a competent contractor, the Court finds by a preponderance of the evidence that their work is covered by the implied warranty of good quality and workmanship. Likewise, it is clear CMI breached the implied warranty of good quality and workmanship.

---

[45] *Jang's Landscaping Inc. v. Dryden*, 2010 WL 11508199, at *3 (Del. Com. Pl. April 20, 2010) (citing *Shipman v. Hudson*, 1993 WL 54469, at *3 (Del. Super. 1993)).

[46] *Gibbons*, 2009 Wl 3014325, at *2 (quoting *Nelson v. W. Hull & Family Home Improvements*, 2007 WL 1207173, at *3 (Del. Com. Pl. May 9, 2007)).

[47] *Gibbons*, 2009 WL 3014325, at *2 (citing *Shipman v. Hudson*, 1993 WL 54469, at *3 (Del. Super. Ct. Feb. 5, 1993)); *Jang's Landscaping Inc. v. Dryden*, 2010 WL 11508199, at *3 (Del. Com. Pl. April 20, 2010).

[48] *Estall v. John E. Campanelli & Sons, Inc.*, 1993 WL 189500, at *3 (Del. Super. Ct. April 30, 1993).

[49] *Dryden*, 2010 WL 11508199, at *3.

While Ms. Sinclair did not produce any expert witnesses, CMI conceded at trial that the propane tank's proximity to the Generator violated county code. CMI also acknowledged that some of the workmanship did not meet the high standards CMI typically upholds. However, even though the Court does find that CMI breached the implied warranty of good quality and workmanship, Ms. Sinclair has failed to introduce any credible evidence as to the value of damages.[50] Thus, Ms. Sinclair's breach of implied warranty of good quality and workmanship claim is unsuccessful for the same reason as her breach of contract claim.

Notwithstanding the fact that Ms. Sinclair failed to prove the damages element in both claims, Ms. Sinclair is entitled to an award of nominal damages. Where a plaintiff fails to satisfy the legal criteria for compensatory damages, the plaintiff may recover nominal damages when she can prove a contractual breach.[51] While nominal damages are not awarded for the wrong, they are awarded in recognition of a technical injury as a way of asserting the rights of the plaintiff.[52] Typically, nominal damages are set at an insignificant amount, usually one dollar.[53] They function as a way of "declaring an infraction of the [p]laintiff's rights and the commission of a

---

[50] *See Gunzl v. Veltre*, 2008 WL 5160137, at *4 (Del. Com. Pl. May 22, 2008) (explaining that the party alleging breach "has a responsibility of proving damages as an essential element of [her] claim by a preponderance of the evidence").

[51] *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009).

[52] *USH Ventures v. Global Telesytsems Group, Inc.*, 796 A.2d 7, 23 (Del. Super. 2000).

[53] *Id.*

wrong."[54] Thus, the Court holds that Ms. Sinclair is entitled to nominal damages in the amount of one dollar.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Appellant Lisa Sinclair. Ms. Sinclair is entitled to an award of one dollar in nominal damages. Each party shall bear their own costs.

**IT IS SO ORDERED.**

The Honorable Carl C Danberg,
Chief Judge

---

[54] *Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *15 (Del. Ch. Dec. 15, 2005).