# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

ROLAND C. ANDERSON, )
)
Mr. Anderson, Appellant, )
)
v. ) C.A. No: CPU4-24-000781
)
WOLF'S ELITE AUTO II, )
)
Defendant, Appellee. )
)

Submitted: September 9, 2025
Decided: October 9, 2025

Roland C. Anderson
113 Lloyd Street
Wilmington, DE 19804
*Self-represented*
*Mr. Anderson/Appellant*

Sanajay K. Vhatangar, Esq.
Independence Mall
1601 Concord Pike, Suite 100
Wilmington, DE 19803
*Attorney for*
*Defendant/Appellee*

## DECISION AFTER TRIAL

**Danberg, C.J.**

This breach of contract action, which is before the Court on appeal *de novo* from a decision of the Justice of the Peace Court, stems from an agreement between Mr. Roland Anderson ("Mr. Anderson") and Defendant Wolf's Elite Auto II for the sale of a used vehicle. A bench trial was held on September 9, 2025, during which the Court heard testimony from Mr. Anderson and Ms. Haydee Avila, a representative of Defendant. The Court also received documents into evidence. At the conclusion of the trial, the Court reserved decision. This is the Courts final decision after trial.

## FACTS AND PROCEDURAL HISTORY

On or about March 27, 2020, Mr. Anderson purchased a used 2007 Ford Edge from Defendant (the "Ford"). Defendant's guarantees as to the condition of the Ford, and Mr. Anderson's acceptance of same, were well-documented. At least four records executed by Mr. Anderson in the sale—namely, the Buyers Order,[1] the Buyers Guide,[2] the Warranty Disclaimer,[3] and the We Owe form[4] (collectively, the "Sales Forms")—all contained language explicitly stating that the Ford was sold "as is." The Buyers Guide even cautioned that "major defects" may occur in used cars,

---

[1] Def. Ex. D-8.
[2] Def. Ex. D-10 (hand notated as "Exhibit D").
[3] Def. Ex. D-10 (hand notated as "Exhibit F").
[4] Def. Ex. D-10 (hand notated as "Exhibit C").

2

such as inoperable air conditioner, oil leakage, improper functioning starter, and engine issues, among other things.[5]

The Sales Forms also made clear that Mr. Anderson waived all express and implied warranties,[6] and the Ford did not come with an express dealer warranty; the Warranty Disclaimer even provided that the buyer (i.e., Mr. Anderson) would bear the costs of any repair or correction of defects.[7] However, while the Ford was not subject to a dealer warranty, a third-party limited 12 month/15,000 mile warranty through Automotive Performance Warranty International ("APW") was included in the sale at no additional cost (the "APW Warranty"). However, at some point in late 2020 or early 2021, APW went out of business.[8]

Defendant also advised Mr. Anderson of inconsistencies in the Ford's reported mileage. When Defendant originally acquired the Ford, the title listed the vehicle's milage as 157,409; however, the odometer reading was approximately 5,000 lower at 152,364 miles. This inconsistency was communicated in the Odometer Disclosure Statement, which was executed by both parties.

---

[5]  Def. Ex. D-10. The list did not purport to be an exhaustive account of all possible defects.
[6]  Def. Ex. D-10.
[7]  *Id.* Specifically, the Warranty Disclaimer provided "this vehicle is sold **without any warranty.** The buyer will ear the entire expense of repairing or correcting any defects that presently exist and/or may occur in the vehicle unless the salesperson promises in writing to correct such defects."
[8]  Ms. Avila testified that she believed APW went out of business in the wake of the COVID-19 pandemic, in late 2020 or early 2021.

Apprised of the odometer inconsistency, the "as is" condition of the vehicle, and the lack of dealer warranty, Mr. Anderson proceeded to purchase the Ford for $3,816. However, it was not long before Mr. Anderson reported experiencing issues with the vehicle.

According to Mr. Anderson, the vehicle's air conditioning system failed in July 2020; however, Defendant replaced the air conditioning compressor as it was covered under the APW Warranty. Mr. Anderson recounted a litany of mechanical issues with the Ford, which he described as oil leakage, a faulty cylinder, and problems starting. However, he did not pinpoint when those issue arose, and he did not offer any evidence to establish that his characterization of the issues was based upon a diagnosis from a trained professional. In November 2020, Mr. Anderson contacted Defendant regarding the Ford's starting issues, and his concerns that the vehicle was a "lemon." Defendant offered a service appointment, but Mr. Anderson declined. He made no further efforts to contact Defendant regarding the Ford.

At some point after the sale, Mr. Anderson learned that the Ford had previously been in a front-end collision—a fact which Defendant had not disclosed to him. Ms. Avila did not dispute that Mr. Anderson had not been informed about the prior accident but explained that he did not ask any questions pertaining to the vehicle's accident history. She did note that the accident would have been disclosed had Mr. Anderson asked.

4

## PARTIES' POSITIONS

Mr. Anderson in this matter appeared *pro se*, which presents challenges as the Court must carefully navigate the tension between extending appropriate consideration to a self-represented litigant and fulfilling its duty to remain an impartial arbiter.[9] The Court, exercising its discretion, afforded leeway in the presentation of evidence at trial and made efforts to interpret Mr. Anderson's arguments within the confines of a legal paradigm. Based on the presentation of evidence at trial, Mr. Anderson's claims are best categorized as: (i) violation of Delaware's odometer statute; (ii) violation of the Federal odometer statute; (iii) violation of Delaware's Consumer Protection Act; and (iv) breach of contract.

## DISCUSSION

### I. Violation of Delaware's Odometer Statute

Mr. Anderson claims that Defendant violated Delaware's Disclosure of Odometer Information statute in that the Fords actual odometer reading differed from the mileage set forth in the title. However, this statute does not provide for a

---

[9] *See Durham v. Grapetree, LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014)(affording leeway to the pro se plaintiff's "to allow the matter to be determined on its merits"(quoting *Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del.Super.Sept. 24, 1986)); *Lanciotti v. Shore Properties Maintenance*, 1995 WL 1582030, at *2 (Del. Com. Pl. Nov. 28, 1995)(noting that the court cannot be a resource to help pro se litigants who find court rules to be difficult to understand because the court must maintain neutrality); *Dickens v. Costello*, 2004 WL 396377, at *1 (Del.Super. Feb.23, 2004) ("Because the plaintiff is acting pro se, the Court will attempt to unearth the merits of his most recent motion"); *Zhai v. Stein*, 2012 WL 1409358, at * (Del. Super. Jan. 6, 2012)("This Court will accommodate [a pro se litigant] only to the extent that the substantive rights of the opposing party are not affected").

civil cause of action;[10] only the State can bring forth criminal charges for violations of this statute.[11] Therefore, Mr. Anderson cannot recover for the alleged violations of Delaware's Disclosure of Odometer Information statute.

## II. Violation of the Federal Odometer Statute

Unlike its State counterpart, the Federal Odometer Act ("the Act") authorities a private cause of action.[12] Under section 32705 of the Act, a person transferring ownership of a motor vehicle is required to provide a written disclosure stating the mileage shown on the odometer and, if known, whether the actual mileage differs from the odometer reading.[13]

Here, the Ford's actual mileage indeed differed from the odometer reading. However, Mr. Anderson was presented with—and signed—the Odometer Disclosure Statement noting both the mileage reading and the warning that the odometer reading was not the actual mileage.[14] As such, Defendant was not in violation of § 32705.[15]

---

[10] 21 *Del. C.* § 6420.

[11] 21 *Del. C.* § 6420.

[12] *Goldman Motor Sales & Leasing v. Singh*, 2025 WL 1256722, at *8 (N.D. Ohio April 30, 2025).

[13] *Id.*

[14] Def. Ex D-3.

[15] Further, even if Defendant were not in compliance with § 32705—a conclusion which the Court is not drawing—the Act requires intent to defraud in addition to a disclosure violation. Here, there is no evidence of an intent intended to defraud.

6

### III. Violation of Delaware's Consumer Protection Act

Under Delaware law, car sellers are obligated to disclose certain conditions, such as where "the vehicle's title been branded 'reconstructed', 'flood damaged', 'salvage' or was a 'taxi'."[16] However, there is no explicit statutory obligation on a car seller to disclose a vehicle's accident history outside of the aforementioned categories. Still, failure to disclose could result in liability under Delaware's Consumer Fraud Act (the "Act") where the seller conceals or omits a material fact with the intent that the buyer relay on that concealment or omission.[17]

Here, the Ford was sold "as is" and without warranties—a fact which was acknowledged by Mr. Anderson in his execution of the Sales Forms. Delaware case law establishes that "as is" in context of a car sale is "ordinarily understood to mean that the buyer takes the entire risk as to the quality of the goods sold."[18] Indeed, it is clear from the record in this case that Mr. Anderson knowingly and willingly assumed such risk regarding the quality of the Ford in this transaction. Mr. Anderson acknowledged the "as is" condition of the Ford in executing each of the four Sales Forms—one of which (the Buyers Guide) specifically warned of the potential issues including those which, according to Mr. Anderson, ultimately came to fruition.

---

[16] 21 *Del. C.* § 6309(d).

[17] *Smith v. Daimlerchrysler Corp.*, 2002 WL 31814534, at *7 (Del. Super. Nov. 20, 2002).

[18] *Pajardo v. Bumbrey*, 2008 WL 5340897, at *2 (Del.Com.Pl. Dec. 22, 2008).

7

There is no evidence in the record to suggest that Defendant's non-disclosure of the prior accident was done with the intent to induce Mr. Anderson's reliance in purchasing the vehicle. By all accounts, the information regarding the prior accident was available to Mr. Anderson had he requested it.[19] Accordingly, Mr. Anderson failed to satisfy his burden of proving Defendant violated the Act.

### IV. Breach of Contract

To prevail on a breach of contract claim, the party alleging the breach must prove, by a preponderance of evidence, that: "(1) a contract existed; (2) Defendant breached an obligation imposed by the contract; and (3) damages resulted from Defendant's breach."[20] Under Delaware law, "to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all of the provisions of [the] contract."[21] Damages for a breach of contract will be calculated to place the injured party in the position they would have been in if the breach had not happened.[22]

---

[19] In addition to asking Defendant about the Ford's accident history, Mr. Anderson could have accessed information regarding the vehicle's accident history via public reporting forums, such as Carfax or Experian, as evidenced by the fact that Mr. Anderson used those very forums to obtain the accident information after he purchased the Ford.

[20] *Gregory v. Frazer*, 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Tech., LLC v. Hewlett-Packard, CO.*, 840 A.2d 606, 612 (Del. 2003).

[21] *Emmett Hickman Co. v. Emilio Capano Dev., Inc.*, 251 A.2d 571, 73 (Del. Super. 1969).

[22] *Delaware Service, Inc. v. Royal Limousine Svc., Inc.*, 1991 WL 53449, at *3 (Del. Super. April 5, 1991).

There is no dispute that a contract existed between the parties. The dispute centers on whether Defendant materially breached any contractual obligations, and whether Mr. Anderson suffered damages as a result. Mr. Anderson failed to point to any particular contractual provision which Defendant violated but generally alleged that Defendant breached the agreement by failing to disclose the Ford's accident history and by "selling" him a "fraudulent" warranty.

There is no evidence in the record to support a finding that Defendant breached the agreement by failing to disclose the accident history. As discussed above, Mr. Anderson was well apprised of the fact that the Ford was sold "as is." Likewise, there is no evidence in the record to support a finding that Defendant breached the agreement by selling a fraudulent warranty. As clearly stated in the Sales Forms, all implied warranties were disclaimed, and no dealer warranty was provided.

To the extent that Mr. Anderson takes issue with the APW Warranty, that warranty was offered through a third party and not by Defendant. The undisputed evidence establishes that APW was an independent entity that was operational at the time of the vehicle's sale and initially honored a warranty claim for the air conditioning system before later going out of business in late 2020 or early 2021. There is no evidence that Defendant induced Mr. Anderson to purchase the Ford based on the existence of the APW Warranty, nor is there any evidence that

9

Defendant knew or should have known that APW would later cease operations. Further, Mr. Anderson presented no evidence that he paid Defendant directly for the warranty, or that Defendant retained any proceeds related to the APW Warranty transaction.

Moreover, Mr. Anderson failed to adduce competent or expert evidence establishing that any of the Ford's alleged mechanical issues fell within the scope of the APW Warranty's coverage, which renders the Court unable to determine whether any damages resulted from Defendant's conduct as opposed to APW's dissolution.[23] Accordingly, the Court finds that Mr. Anderson has failed to meet his burden of proving, by a preponderance of the evidence, that Defendant breached any contractual obligation or that any damages are attributable to Defendant's conduct.

---

[23] Notably, Defendant offered Mr. Anderson the opportunity to have the Ford serviced by Defendant—an offer which Mr. Anderson declined. Thus, even if Defendant were bound by the APW Warranty, Mr. Anderson's failure to present the car for repair would render Defendant not in breach.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendant, Appellee, Wolf's Elite Auto II. Each party shall bear its own costs.

**IT IS SO ORDERED.**

The Honorable Carl C Danberg
Chief Judge